# ABBOTTS'

# PRACTICE REPORTS.

## NEW-YORK.

### HICKS *a.* GILDERSLEEVE.

*Supreme Court ; Dutchess Special Term, January,* 1856.

#### ADVANCEMENTS. HOW PROVED.

Where the property of an intestate consists both of real and personal property, and advancements have been made during his lifetime to his children, it is not necessary that the partition of the real estate and distribution of the personals should be made at one and the same time, in order to provide for the advancements.

In such case, where the rights of the parties in the real and personal estate are precisely alike, any court which obtains the control of either fund in a proper proceeding is bound to go on and distribute it according to the statute ; and in the distribution of the fund last reached, regard is to be had to the decree then already made.

For the purpose of charging a child with advancements, in the division of an estate in case of intestacy, the advancements cannot be proved by the mere declaration of the ancestor ; but must be shown according to the ordinary rules of evidence.

When, however, it has been shown that money or property was received by the child from the intestate, the declarations, &c., of the latter are competent evidence to show that they were not intended as an absolute gift, nor as a mere loan, but as advancements.

By what evidence advancements may be proved.

Partition suit, tried by the court.

*T. C. Campbell,* for plaintiffs.

*H. Hogeboom, J. P. H. Tallman, V. D. Bonesteel, W. Call,* for defendants.

EMOTT, J.—This suit was brought by Wilson Hicks, and Emeline his wife, against John Gildersleeve and others, for the partition of a farm of land in Dutchess County, in which the plaintiff Emeline claims one undivided seventh part. The lands were owned by William Gildersleeve, the ancestor of the parties, in his lifetime, and from him these parties take by descent.

He died intestate September 4, 1854, leaving six children living at the time of his death,—James, John, and Anna Gildersleeve—Mary, wife of David Hicks—Emeline, wife of Wilson Hicks, the plaintiff—and Mariann Bedell; and also the children of another daughter, Pamelia Bradley, who had died before the testator, and left Sarah G., wife of Paul C. Upton, and Emily Wines, wife of Gilbert H. Wines, surviving her. Since the death of the intestate, Mariann Bedell has also died intestate in November, 1854, leaving an infant daughter, Emma Bedell, who is represented by a guardian in this suit.

The shares inherited by these parties respectively were not disputed; and the fact being also established and admitted that a sale of the lands in question is necessary, the judgment must direct the sale and determine the shares inherited, according to the referees' report.

The questions really in litigation in this suit have arisen upon the answers of some of the defendants, who claim that William Gildersleeve during his lifetime made advancements to certain of his children, and that the amounts so advanced should be deducted from or charged against the shares of the proceeds of these lands, which are to be distributed to them respectively.

The plaintiffs' counsel urged upon the argument that these advancements, if proved, should not be charged against the parties to whom they were made, until they had first been charged against and had satisfied their distributive shares in the personal property of the decedent. At least, it was said these questions could not be determined without bringing in the same proceeding the personal assets of William Gildersleeve which should remain after paying his debts, and fully administering his estate, into a common fund with the proceeds of this real estate,

and charging whatever amount may have been advanced to any child upon his share of the joint fund then created.

In this view I have been unable to concur. The statutes (1 *Rev. Stats.*, 754, §§ 23, 24, 25, 26 ; 2 *Rev. Stats.*, 97, §§ 76, 77, 78) establish the same rule in reference to advancements, in regulating the descent of real and the distribution of personal property. Indeed, the qualification added to section 78 (2 *Rev. Stats.*, 98) would seem to exclude this case from the operation of the provisions relating to advancements which are contained in the statute of distributions. These provisions are applicable in terms only to cases where the property of the intestate consists wholly of personal estate. This case will be left then to the control of sections 23, 24, 25, 26 of the statute of descents (1 *Rev. Stats.*, 754).

These sections of the statute regulate the matter in its application to both real and personal property at the same time and in the same manner; and I apprehend that in a case like the present, when the rights of the parties in the real and personal estate are precisely alike, any court which obtains the control of either fund in a proper proceeding is bound to go on to distribute it according to the rules of the statute. It could serve no useful purpose in such a case that the fund first reached should be retained to await the collection or proper time for distribution of the other.

The parties being the same, the shares the same, and the rule of division and of the application of these advancements the same, whenever the personal estate of William Gildersleeve, or the surplus after paying his debts, shall be brought into the proper Surrogate's Court for distribution, that court can readily take into account the decree which will be entered and the payments which will be made here; and if the whole of these advancements are satisfied, and the shares of the children of William Gildersleeve fully equalized in the division of the proceeds of his land, the distribution of the personal estate will then be made without regard to any advancements, and as if no such advancements had ever been made.

I can therefore see no objection to taking an account of these advancements in the present action; and this brings us to the question how their amount is to be ascertained.

The counsel for the defendant, John Gildersleeve, produced

before the referee a book of accounts of ancient appearance, which was shown to have come from the possession of the intestate William Gildersleeve, to have been used by him and kept in his chest or with his papers for a great many years, and to contain accounts and charges in his favor against various persons and in favor of others against himself during all this period. I think it is also proved that the entries in this book are in the handwriting of William Gildersleeve, with the exception of certain charges against some of his children, in respect to their alleged advancements, which are otherwise accounted for. Upon this book appear entries of money and property charged against certain of the children of William Gildersleeve ; and these entries, it is contended, furnish evidence of the fact that such moneys and property were paid or advanced to these children respectively, at the dates specified in the book.

It was not contended that this book was proved as a book of accounts, so as to make it proper evidence of such charges as these against strangers or third parties.    The effect of this evidence is therefore the same precisely with that of the oral declarations of the ancestor, as to the advancements which he had made to his children, which were also offered in evidence to establish these charges, and with that of another species of evidence which I will proceed to notice.

There was produced by the defendants an instrument executed by William Gildersleeve, as and for the purpose of a will ; but which has been rejected by the Surrogate, and was conceded not to be a valid or properly executed will or legal instrument of any description.    It was therefore no more than a written declaration of the deceased ; and thus the book and accounts, the written paper intended as a will, and the oral statements and declarations of William Gildersleeve, all stand upon the same footing, and all present the question whether the fact that money or property has been advanced to a child can be proved in a suit for the partition or distribution of an estate by the declarations to that effect, oral or written, of the ancestor who made the advancements.

I am not aware that this precise question has ever been presented to the courts of this State, nor indeed have I been able to find the question discussed in any case reported in the books. Chancellor Kent, in his Commentaries (4 *Kent*, 418), states that

in Maine, Massachusetts, and Vermont the requisite evidence of an advancement is regulated by statute, and that it may consist either of a written acknowledgment by the child, or written charge by the parent against the child, or a declaration to that effect in the gift or grant of the parent.

I have not been able to consult the statutes of these States, but from this latter expression I should infer the object of these regulations was, not to enlarge or increase the methods of proving the fact of the advancement itself, but to provide when a transfer of money or property by a parent to a child is proved, either by the production of a deed or instrument by which it was made, or by the evidence of witnesses to the fact, in what manner such a transaction might be shown to be neither a loan or the creation of a debt, nor intended as an absolute gift. If this be the correct import of these statutes, they do but affirm, and perhaps limit, existing rules of evidence.

The declaration, oral or written, of a parent, his entries and charges in his books, or any explicit memorandum made by him, are unquestionably proper evidence upon questions of advancement, after it has been proved that a child has received money or property of such parent, to show that such money or property was neither intended as an absolute gift on the one hand, nor to create a debt on the other. For that purpose I think the declarations of the intestate, his entries in his account-book, and the paper signed by him and intended for a will, were properly received in evidence in this action. But this is their only effect. They do not prove or establish the fact that any of these children had money or property from their father. That must be shown, like any other fact, in a legal manner and according to the ordinary rules of evidence.

It is said that these children of William Gildersleeve receive these lands from his bounty, and therefore must take them subject to all charges which his declarations show that he intended to make against them. If this statement were strictly true, I think the inference claimed would hardly result. But it is scarcely correct to say that the heir-at-law takes by the bounty of the ancestor. He takes by the law of the land and not by the will of the ancestor, and he takes subject to any charges or liabilities imposed according to that law. If the ancestor desired to direct or control the enjoyment or reception of his pro-

perty, or to establish an accountability for advancements in the case of any child, he had at all times the means of doing so by the execution of a will, which, as it would be the source of title to his children, would enable him to subject the lands devised to any charges or drawbacks he thought proper. Or he might at the time of making these advancements, or subsequently, have required from his children evidence of their having been made, which would settle at once the fact of the advances and their character and design.

But to say that because the deceased was the owner and possessor of the lands which the parties to this suit inherit from him as his heirs, therefore his declarations are sufficient proof that he had advanced to any of them various amounts of money at different times, is not warranted by any rules of law or evidence.

These declarations, entries, and statements do, however, establish the fact that whatever money or property is proved to have been advanced or furnished by William Gildersleeve to any of his children, was intended by him as advancements towards their portions of his estate, and not as absolute gifts, nor as loans to be repaid to him or to his estate. For that purpose, as I have said, this evidence was legitimate. For the amount of these advancements, and to see if any were in fact made, we must look to the other proof in the case.

Two of the defendants, Sarah G. Upton and her husband, and Emily Wines and her husband, being the daughters of Pamelia Bradley, a deceased daughter of the intestate, and together representing one-seventh of the lands in question, have answered with their husbands, admitting and averring that their mother, Pamelia Bradley, was advanced by her father to the amount of one thousand dollars; each of them will therefore be charged with one-half that amount upon her interest in the proceeds of the land.

Emma Bedell, the daughter of Mariann Bedell, is an infant. Her mother died after the intestate, and it is clearly shown that she stated and admitted that she had been advanced three thousand dollars by him, and that she made an entry in his book, which is produced, of charges against herself to that amount at his request. As her daughter claims under her, these statements and admissions against herself and her own interest, are, I ap-

prehend, clearly legal evidence against her, and she must be charged with the amount thus proved.

Anna Gildersleeve was sworn as a witness, and proved advances to herself by her father to a like amount of three thousand dollars. James Gildersleeve was also a witness, and he proved or admitted advances to him in like manner by his father. The amount of these advances in his case he leaves somewhat indefinite; and if I could find any other evidence which seemed to me legal and proper to fix their amount, I would readily adjust it by such proof instead of his statements. But he does not refer to or admit the entries in his father's book, so as to make them any better evidence against him than against the others, and I have not been able to find any other proof besides his own statements, of the amounts which he received. It is altogether probable that he did in fact receive as much as any of the others; but I can find no proof of more than $2,500. He will be charged with that sum.

I should not consider admissions of David Hicks sufficient evidence against his wife, to charge her, or her share of these lands, with any advances. But Hicks was called as a witness, and proved the fact that his father-in-law advanced to him notes and money at different times to the amount of $2,700. In his case, as in that of James, it is probable that advances were made to an equal amount with those made to any of the other children, but there is no evidence upon which I can charge him or his wife with more than $2,700.

It is proved, I think, beyond any doubt, that these payments and transfers, whether made to David or Mary Hicks, were intended as advances upon and towards the share or interest of the intestate's daughter Mary, the wife of David Hicks.

Advances to the plaintiffs, to a like amount of $3,000, in behalf of Emeline, the intestate's daughter, are proved satisfactorily by the statements and admissions of both Wilson and Emeline Hicks, made in the presence of each other. There can be no legal objection to this testimony. The plaintiffs will therefore be subject to a charge of $3,000 on their shares.

John Gildersleeve is not alleged to have ever received any bounty or advances from his father.

There must be a judgment entered according to these directions. All parties to have their costs out of the fund; the at-

torney for John Gildersleeve and for Wines and wife to have one bill of costs for both these appearances; and the plaintiff to have an additional allowance of two per cent.